UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JOVAN WILLIAMS,

          Plaintiff,

     v.                                      Case No. 20-cv-1196-bhl

JEFFERY MANLOVE, et al.,

          Defendants.

## DECISION AND ORDER GRANTING DEFENDANTS'
## MOTION FOR SUMMARY JUDGMENT

      Plaintiff Jovan Williams, a prisoner who is representing himself, filed this action under 42 U.S.C. §1983, alleging that Defendants Jeffery Manlove and Crystal Meli violated his constitutional rights when they were deliberately indifferent to his serious medical needs and provided him with inadequate treatment. The case is before the Court on Defendants' motion for summary judgment, which is fully briefed and ready for the Court's decision. The Court will grant Defendants' motion and dismiss this case.

### BACKGROUND

      At the relevant time, Williams was housed at the Waupun Correctional Institution, where Meli worked as the nursing supervisor/health services manager and Dr. Manlove worked as a physician. Meli's position was administrative in nature. She did not evaluate, treat, or prescribe medications for inmates. Advanced care providers like Dr. Manlove and nurse practitioners are responsible for final treatment decisions and writing prescriptions. Dkt. No. 22 at ¶¶1-3; 12-13.

      Williams has a history of medication misuse and attempted overdoses. He has hoarded medication, refused to disclose how he obtained unidentified medication, and allegedly overdosed

by swallowing multiple pills at once. This behavior occurred both before and after the events at issue. At the relevant time, Williams was housed in the restrictive housing unit (RHU). Inmates in RHU are not allowed to have medications in their cells; all medications must be distributed by correctional officers or nursing staff. Dkt. No. 22 at ¶¶11; 14-19, 38.

On June 21, 2019, the health services unit received several copies of the same information request from Williams. One was addressed to Meli, one to nurse Donna Larson (not a Defendant), and one to Dr. Manlove. In the request, Williams asked that the medication he was then prescribed for complaints of chronic neck and back pain and migraines be crushed because he was having urges to hoard his pills and overdose on them. Per policy, Williams' request was triaged by nursing staff. On June 25, 2019, Advanced Practice Nurse Practitioner Robert Martin (not a Defendant) reviewed and denied Williams' request. Martin discontinued Williams' prescription for Tylenol/salsalate and instead ordered 4% lidocaine topical cream for his pain. In his response to Williams' request, Martin wrote, "I discontinued Tylenol/salsalate due to potential of overdose. I ordered you Lidocaine cream; it's really good at numbing pain." Dkt. No. 22 at ¶¶20-22, 26; Dkt. No. 40 at ¶20; Dkt. No. 23-1 at 52.

Dr. Manlove does not recall when or if he reviewed Williams' request or Martin's response to Williams, but he explains that Martin's decision to discontinue Williams' medication at that time was reasonable because crushing medication must be done by a registered nurse at the time of administration, which is an inefficient use of already limited nursing resources. He further explains that crushing medication is not a failsafe way to stop medication misuse, as some inmates still manage to hoard crushed medications. Finally, Dr. Manlove points out that Martin simply replaced Williams' prescription for analgesic pills with a topical pain reliever that has less potential for hoarding or overdose. Williams asserts that the topical pain reliever addressed his chronic back

2

and neck pain, but not his migraines. Meli responded to Williams' request on July 23, 2019, noting that the issue had been discussed with his provider. Dkt. No. 22 at ¶¶27-29; Dkt No. 40 at ¶27.

During the following month, Williams submitted health service requests complaining about migraine pain, testicular pain, and back pain. Nursing staff, who are the first point of contact for the nearly 1,200 inmates at Waupun, handle inmate complaints that do not require attention from a doctor, and they triage the remaining patient complaints to make sure the doctor first sees the inmates with the more urgent medical concerns. It is common for nursing staff to first work with inmates to try to address complaints with easy solutions such as education and over-the-counter medication and to advise an inmate to contact them again if the problem is not resolved. Williams was seen by nursing staff for his complaints of migraine pain, chest pain, and back pain on July 8, 9, 16, 25 and 28, 2019. He received a dose of Tylenol for his complaints of severe migraines on July 8, 9, 16, and 28, 2019. Dkt. No. 22 at ¶¶33-35; Dkt. No. 40 at ¶35.

On August 1, 2019, Dr. Manlove examined Williams for complaints of testicular pain, chronic shoulder and back pain, and migraines. Dr. Manlove ordered two tabs of Excedrin Migraine per day, crushed, to address Williams' migraines. Dr. Manlove explains that he believed ordering the crushed Excedrin was the best course of action at that time because it was clear by then that the lidocaine patches were insufficient to treat Williams' pain. Dkt. No. 22 at ¶36-37.

Defendants explain that Williams presented a challenge because he continuously complained about pain, but also continuously misused his medication. Dr. Manlove asserts that he can provide treatment only if a patient is willing to take the medication as prescribed. He explains that, with Williams, it was difficult to balance pain management and keeping him safe. Williams asserts that him presenting a challenge to health services is no excuse for Defendants to ignore his request to be placed on crushed medication. Dkt. No. 22 at ¶39; Dkt. No. 40 at ¶39.

3

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. All reasonable inferences are construed in favor of the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co*., 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id*. Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotations omitted).

## ANALYSIS

Williams asserts that Defendants violated his constitutional rights when they approved, condoned, or failed to override Martin's decisions to deny Williams' request for crushed pills, to cancel his pain medications, and instead to prescribe topical cream, which Williams asserts failed to address his chronic migraines. For the reasons explained below, Williams' claims fail as a matter of law.

The Eighth Amendment prohibits "cruel and unusual punishments" and "imposes a duty on prison officials to take reasonable measures to guarantee an inmate's safety and to ensure that

4

inmates receive adequate care." *Phillips v. Diedrick*, No. 18-C-56, 2019 WL 318403 at *2 (E.D. Wis. Jan. 24, 2019) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). "[O]nly the unnecessary and wanton infliction of pain implicates the Eighth Amendment. . . . [T]he Eighth Amendment does not apply to every deprivation, or even every unnecessary deprivation, suffered by a prisoner, but *only* [to] that narrow class of deprivations involving 'serious' injury inflicted by prison officials acting with a culpable state of mind." *Snipes v. DeTella*, 95 F.3d 586, 590 (7th Cir. 1996) (quoting *Hudson v. McMillian*, 503 U.S. 1, 19 (1992) (Thomas, J., dissenting)). The Seventh Circuit has repeatedly emphasized that "the Eighth Amendment is not a vehicle for bringing claims for medical malpractice." *Id.* (citing *Estelle v. Gamble*, 429 U.S. 97, 102 (1976)). Thus, "[m]edical decisions that may be characterized as classic example[s] of matter[s] for medical judgment such as whether one course of treatment is preferable to another, are beyond the Amendment's purview. Such matters are questions of tort, not constitutional law." *Id.* at 590-91 (internal citations and punctuation omitted).

Dr. Manlove explains that he agreed with Martin's decision to cancel Williams' pain medications in pill form and instead to prescribe a topical cream. Dr. Manlove highlights the priorities Martin sought to balance when he made his decision. Martin desired to keep Williams safe from himself in light of his stated urges to misuse his medications, he desired to address Williams' complaints of chronic pain, and he desired to preserve already limited nursing resources. Manlove agreed with Martin's decision that the best way to balance those priorities was to keep pills from Williams and try a topical cream, which Martin believed was "really good at numbing pain." Williams may disagree with the decision to prioritize his safety and the conservation of nursing resources above his comfort, but his disagreement is insufficient to establish a violation of the Eighth Amendment. *See Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003). On this

record, no reasonable jury could conclude that the decision to try an alternative form of pain relief that was less susceptible to abuse and would not require using additional nursing resources was "so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate the prisoner's condition." *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996).

Williams asserts that the cream did not help with his migraines and that during the following month, he submitted multiple requests to health services about the pain. But Williams does not present evidence from which a jury could conclude that Dr. Manlove reviewed those requests. Instead, Defendants explain that it is common for nurses to try to address inmates' needs first so that the doctor may focus on the more urgent needs. That approach was followed in response to Williams' requests. During the month of July, Williams was seen five times by nurses who, on four occasions, administered Tylenol for his migraine pain. Although Williams asserts that he should have been provided with a prescription rather than isolated doses, Dr. Manlove is not liable for failing to address Williams' repeated complaints of pain because there is no evidence suggesting that he knew about those complaints. *Douglas v. Reeves*, 964 F.3d 643, 649 (7th Cir. 2020).

Williams was not scheduled to see Dr. Manlove again until one month after Martin's decision. At that time, Dr. Manlove prescribed crushed Excedrin because, as he explains, it was clear by then that the lidocaine patches were not working to address Williams' migraines. Williams asserts that he should have been given a crushed pills accommodation right away rather than being made to endure a month of pain. But the evidence shows beyond reasonable dispute that the decisions about how to balance Williams' need for pain relief with the need to keep him safe from himself and conserve limited resources was based on Martin's medical judgment that a topical cream could achieve all the priorities. And, when it was determined that the cream did not

address Williams' migraine pain, Dr. Manlove prescribed crushed pills. With that in mind, no reasonable jury could conclude that the delay Williams experienced in receiving his requested accommodation of crushed pills was the result of deliberate indifference to his medical needs. *See, e.g., Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 661 (7th Cir. 2021) (holding that delay caused by medical judgment on how to best treat plaintiff did not show deliberate indifference). Dr. Manlove is entitled to summary judgment.

Meli is also entitled to summary judgment. As the health services manager/nursing supervisor, Meli was entitled to defer to Martin's order because it was not apparent that his order would likely harm Williams. *See Holloway v. Delaware County Sheriff*, 700 F.3d 1063, 1075 (7th Cir. 2012); *see also Johnson v. Snyder*, 444 F.3d 579, 586 (7th Cir. 2006) (prison health administrator who was also a nurse could defer to doctor's decisions), *overruled on other grounds by Hill v. Tangherlini*, 724 F.3d 965 (7th Cir. 2013). As Meli explains, she agreed with Martin's decision to cancel pain medication in the form of pills because Williams had a long history of overdosing and posed a threat to himself. She also noted that Martin had prescribed an alternate way to treat Williams' pain that was less susceptible to abuse. In light of Meli's stated reasons for agreeing with the plan of care, no reasonable jury could conclude that her deference to Martin's decision showed deliberate indifference.

Finally, on November 22, 2021, Williams filed a motion to appoint counsel to represent him at trial should his case survive summary judgment. Dkt. No. 49. Because Defendants are entitled to summary judgment, Williams' motion will be denied as moot.

7

# CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants' motion for summary judgment (Dkt. No. 21) is **GRANTED,** Williams' motion to appoint counsel (Dkt. No. 49) is **DENIED as moot**, and this case is **DISMISSED**. The Clerk is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin on January 12, 2022.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge

---

This order and the judgment to follow are final. Plaintiff may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this Court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. §1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serous physical injury. *Id.*

Under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The Court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.